# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

STEVEN PAUL BURNS (#81494)                               CIVIL ACTION

VERSUS

EAST BATON ROUGE PARISH PRISON                           NO. 14-0245-JWD-EWD
EMERGENCY MEDICAL SERVICES, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 5, 2017.

                                             **ERIN WILDER-DOOMES**
                                             **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN PAUL BURNS (#81494)** | **CIVIL ACTION** |
| **VERSUS** | |
| **EAST BATON ROUGE PARISH PRISON EMERGENCY MEDICAL SERVICES, ET AL.** | **NO. 14-0245-JWD-EWD** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the cross-motions for summary judgment of Plaintiff and Defendant, Linda Ottesen (R. Docs. 154 and 183).

*Pro se* Plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), against Prison Medical Services, EBRPP Health Care Manager Linda Ottesen, Nurse Dachel Williams and Dr. Vincent Leggio, D.D.S., complaining that Defendants violated his constitutional and statutory federal rights by failing to provide him with appropriate dental treatment in September and October, 2013. Pursuant to prior Rulings in this case, R. Docs. 87 and 141, all of Plaintiff's claims have been dismissed except his claim of deliberate medical indifference asserted against Health Care Manager Linda Ottesen, in her individual capacity, arising under the Eighth Amendment to the United States Constitution.[1]

---

1  A Magistrate Judge's Report that was issued on March 4, 2016 (R. Doc. 137) included a discussion of the potential liability of Prison Medical Services and found that Plaintiff's claim asserted against that entity should be dismissed. Notwithstanding, through inadvertence, the formal Recommendation that followed did not address Plaintiff's claim asserted against Prison Medical Services. Accordingly, the Court will include in the formal Recommendation that follows this Report a Recommendation that Plaintiff's claim asserted against Prison Medical

Plaintiff moves for summary judgment, relying upon the pleadings (including his Verified Complaint), a Statement of Undisputed Facts, his sworn Declaration provided under penalty of perjury, an excerpt from the Department of Emergency Medical Services Employee Manual, a copy of a Professional Services Agreement between the City/Parish of East Baton Rouge and Dr. Vincent Leggio, D.D.S., a copy of the formal job description and duties of the EBRPP Prison Health Care Manager, a copy of Defendant Ottesen's resumé summarizing her education and professional experience, an excerpt from the EBRPP inmate rulebook relative to "Medical Services," a copy of excerpts from Plaintiff's Medical Intake and Orientation records, copies of Time and Attendance Records for Dr. Vincent Leggio in September and October, 2013, copies of Plaintiff's pertinent medical records and administrative remedy proceedings at EBRPP, an undated summary of Plaintiff's pertinent medical care at EBRPP entitled "Demographics," a copy of a computer-generated Task entitled "Outside Clinic Referral" dated October 30, 2013, copies of excerpts from Defendant's Responses to Interrogatories and Requests for Production of Documents, a copy of a subpoena response by the Hood Dental Clinic dated May 15, 2017, a copy of a Memorandum dated October 3, 2013 from the Louisiana Committee on Parole re: "Transport to Parole Revocation Hearing," a copy of the Oath of Medical Review Panel signed by Dr. Bruce Kestler, D.D.S., dated November 30, 2015 and the Opinion of the Medical Review Panel signed by Dr. Bruce Kestler, D.D.S., dated February 22, 2017.[2]

Defendant Ottesen moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, Responses to Plaintiff's written discovery requests by Defendant Ottesen, the

---

Services be dismissed for the reasons stated in the prior Magistrate Judge's Report of March 4, 2016.

2   Whereas Plaintiff did not attach any documentation as exhibits to his Motion for Summary Judgment, the Court will interpret Plaintiff's Motion as relying upon the documentation provided by him in opposing Defendant's pending Motion for Summary Judgment.

Affidavit of Defendant Ottesen, and a decision issued by a Medical Review Panel on February 22, 2017, which Panel unanimously concluded, relative to the dental care provided to Plaintiff during his confinement at EBRPP, that there was no breach of "the applicable standards of care to incarcerated prisoners in connection with the dental services rendered to Mr. Burns under the specific facts and circumstances of this case."

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record that demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a

judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, Plaintiff alleges that during a two-month period of his confinement at EBRPP, *i.e.,* between the beginning of September and the end of October 2013, he was denied adequate dental care and treatment. Specifically, Plaintiff alleges that commencing on the night of September 1, 2013, he began to experience pain, swelling and bleeding from his gums. He asserts that he went to the prison day room where a deputy found him and offered to contact medical personnel. According to Plaintiff, the deputy returned several hours later and informed him that the duty nurse, Dachel Williams, had refused to come examine him.[3] Plaintiff alleges that the deputy logged the incident into the prison logbook and advised Plaintiff to submit another request for medical care in the morning. Plaintiff alleges that he then prepared an administrative grievance complaining about the overnight denial of treatment and placed it in the prison's grievance receptacle.

Plaintiff alleges that the next morning, September 2, 2013, he informed a deputy that he wanted to declare a medical emergency. Plaintiff alleges that the deputy assured Plaintiff that medical attention would be provided. After breakfast on that date, Plaintiff was seen by a prison nurse concerning his condition. Plaintiff alleges that the nurse gave him pain medication and told

---

3   Plaintiff's claim asserted against Nurse Williams has been dismissed upon a finding that Plaintiff was seen by a medical officer the next morning and that the resulting delay in treatment was therefore minimal. *See* discussion at R. Doc. 137, pp. 8-9.

him that she would schedule him for an appointment with a doctor for September 4, 2013.[4] Plaintiff complains, however, that he was not thereafter seen by a physician on the referenced date. As a result, Plaintiff allegedly prepared another grievance, complaining therein that he was not called out to see the physician on September 4, 2013.

Plaintiff alleges that he was not examined by the prison dentist, Dr. Vincent Leggio, until September 13, 2013. Plaintiff alleges that Dr. Leggio advised Plaintiff that his wisdom teeth were broken and impacted and required oral surgery and also that Plaintiff had additional teeth that required extraction. Plaintiff alleges that Dr. Leggio prescribed pain medication and antibiotics and stated that a referral would be issued for an appointment with an oral surgeon.

Plaintiff alleges that for the remainder of September and October, 2013, his gums were infected, swollen and bleeding, and he experienced substantial pain. Plaintiff alleges that although he continued to submit medical requests and voice complaints to medical personnel and deputies regarding pain and bleeding from his gums, he received no further treatment or attention from Dr. Leggio. Plaintiff acknowledges, however, that between September 1 and October 30, 2013, he was alternatively prescribed Motrin® and Tylenol® for his complaints of pain and was also prescribed antibiotics.

Plaintiff alleges that on October 30, 2013, he was called to a meeting with a security officer at EBRPP, Capt. Caderette, at which time Plaintiff explained the extent of his dental problems. Capt. Caderette allegedly assured Plaintiff that he would contact the "lady over medical" at EBRPP, presumably Defendant Ottesen, and advise her of Plaintiff's complaints.

---

4   In the Inmate Grievance that Plaintiff filed relative to this incident, Plaintiff acknowledges that, in addition to the consultation with a physician that was scheduled for September 4, 2013, he was referred for an appointment with the prison dentist on September 17, 2013, which appointment thereafter took place on September 13, 2013. *See* R. Doc. 166-6 at p. 49.

Finally, Plaintiff alleges that he was escorted to Elayn Hunt Correctional Center on October 31, 2013, for a parole board hearing and was returned to EBRPP on the same date. On November 1, 2013 Plaintiff again requested emergency medical attention at EBRPP. Plaintiff alleges that on that date, a nurse at the facility advised Plaintiff that he had been scheduled for oral surgery at an outside clinic two days previously on October 30, 2013, but the appointment had not taken place. Plaintiff alleges that a couple of days later, he was transferred to the Richwood Correctional Center in accordance with a decision made by the parole board at Plaintiff's hearing of October 31, 2013. Plaintiff was able to ultimately obtain dental treatment and extraction of his impacted wisdom teeth at a transferee institution.

Turning to Plaintiff's claim that Defendant Ottesen failed to ensure that he received appropriate dental care or treatment, it is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious

bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing standard, the Court finds that Plaintiff has failed to make a showing sufficient to support a constitutional claim relative to Defendant Ottesen. Specifically, there is no showing that in administering the health care system at EBRPP, Defendant Ottesen personally ignored Plaintiff's complaints or intentionally treated him incorrectly. The record reflects that although Plaintiff was initially refused care by a nurse after he first complained of pain during the night of September 1, 2013, he was seen the next morning by a nurse at the facility, was provided with pain medication, and was issued a referral to see the prison dentist on September 13, 2013. *See* R. Doc. 166-6 at p. 23. The medical notation from that consultation further reflects that Plaintiff had a scheduled appointment for a "Male P[hysical] E[xamination]" on September 4, 2013. *Id*. Although Plaintiff complains that he was not thereafter called out to see a physician on September 4, 2013, he was in fact seen by the prison dentist, Dr. Vincent Leggio, on September 13, 2013, at which time the dentist prescribed additional pain medication and antibiotics and determined that several of Plaintiff's teeth needed to be extracted. Because the prison was not

equipped to perform complicated extractions, Dr. Leggio issued a referral for Plaintiff to have an appointment with an oral surgeon at an outside facility. *See id.* at p. 29 (noting that certain numbered teeth "should be removed by oral surgeon"). At that time, however, the Charity Hospital System and Earl K. Long Hospital had ceased providing (in October 2012 and April 2013, respectively) advanced dental services to prisoners with complaints such as Plaintiff's. *See* Defendant's Responses to Plaintiff's Interrogatories, R. Doc. 81 at pp. 9-10. According to Defendant Ottesen, after those services ceased being available at those facilities, she diligently searched for one or more alternate providers for such services and, finally, after refusals by numerous local providers, the City/Parish and Prison Medical Services entered into a contract in July 2013 – prior to the events complained of here – with the Hood Dental Clinic in Denham Springs, Louisiana. *Id.* At that time, however, there was a backlog of patients needing dental attention, and the oldest referrals were scheduled first. *Id.* Further, inasmuch as the outside facility only agreed to provide services to a limited number of patients per month (four prisoners every other Friday), periods of delay were unavoidable. *Id.* Notwithstanding, during the period of Plaintiff's wait to receive an appointment, he was admittedly seen by nurses at the facility on several occasions and was provided with both pain medication and antibiotics.

During the six-week period following Plaintiff's visit to the prison dentist on September 13, 2013, Plaintiff made several additional requests for medical attention and, with one exception noted below, was seen by nurses employed at the facility on each occasion. Specifically, on September 15, 2013, he sought and received attention for cold symptoms, at which time he made no reference to any problems with his teeth. *See* R. Doc. 154-6 at p. 30. On September 22, 2013, he was apparently escorted to the prison medical office by a security officer because his gums were bleeding, and he complains that the duty nurse was unhelpful and would not fill out

any paperwork or provide him with aspirin or gauze.[5]  More than ten days later, on October 4, 2013, Plaintiff again requested medical attention for his teeth, noting that his prescription for pain medication and antibiotics had expired and that his problem with his wisdom teeth was "still there." *See id.* at p. 27.  The attending nurse renewed Plaintiff's pain medication at that time and noted that Plaintiff had a "dentist appt on 10/18/13."  *See id.*[6]  Ten days later, on October 15, 2013, Plaintiff again requested medical attention for the "on-going problem with [his] impacted wisdom teeth which are … bleeding" and requested "something for the pain."  *See id*. at p. 26.  The attending nurse again renewed Plaintiff's pain medication on October 17, 2013 and noted that Plaintiff was awaiting an appointment with a "dentist."   Plaintiff was again seen and treated for cold symptoms on October 22, 2013, *see id*. at p. 25, and finally, Plaintiff again requested attention for tooth pain on October 26, 2013, noting that he wanted a referral to see Dr. Leggio again so that he could obtain a prescription for antibiotics and get some gauze pads to help control the bleeding.  *See id*. at p. 24.  Notwithstanding, the record reflects that Plaintiff was not seen in response to this last request because he did not respond when his name was called out at sick call in his housing unit on October 28, 2013.  *See id*.

The foregoing recitation does not support a finding that medical personnel employed at EBRPP, or more specifically Defendant Ottesen, were deliberately indifferent to Plaintiff's serious medical needs.  Specifically, on the morning after he first complained of tooth pain, he was seen

---

5  In later responding to an administrative grievance submitted by Plaintiff relative to the nurse's treatment on September 22, 2013, Defendant Ottesen noted that there was nothing the nurse could have done for Plaintiff inasmuch as he was already on antibiotics and the strongest pain medication that the prison provided for dental complaints.  *See* R. Doc. 166-6 at p. 45.

6  It appears that this information was incorrect, and it is unclear where this erroneous information originated.  Other than the nurse's note from the consultation of October 4, 2013, there is no indication in Plaintiff's medical records that he had an appointment scheduled with either Dr. Leggio or an outside dental provider on October 18, 2013.

by a nurse at the facility, was provided with pain medication, was noted to have a doctor's appointment two days hence, and was issued a referral to see the prison dentist. The two-week period that thereafter elapsed before an appointment took place with Dr. Leggio does not constitute an unreasonable interval of time, particularly inasmuch as Plaintiff was receiving pain medication during the interim for relief of his symptoms. After seeing Dr. Leggio on September 13, 2013, Plaintiff was again prescribed pain medication, was prescribed a course of antibiotics, and was issued a referral to see an oral surgeon for extraction of several of his teeth. Although Plaintiff alleges that he made numerous requests for treatment thereafter, the medical record reflects that Plaintiff did not thereafter submit a written request for medical attention relative to his teeth until three weeks later on October 4, 2013, and then ten days after that on October 15, 2013, when he noted that his prescribed medications had expired. He was seen by nurses on each occasion that he complained, and his pain medications were renewed. There is no indication whatever that Defendant Ottesen, whose position at EBRPP as Health Care Manager was principally administrative and supervisory in a facility housing almost 2,000 prisoners, personally observed or treated Plaintiff on any of these occasions or otherwise had reason to be personally aware of the specific details of his care.

In addition to the foregoing, the record reflects that Plaintiff submitted only three inmate grievances to EBRPP officials during the pertinent time period, wherein he complained about the medical care that he was receiving at that facility. These grievances were forwarded to Defendant Ottesen for a response and were in fact responded to by her. As discussed hereafter, however, these grievances were not sufficient to place Defendant Ottesen on notice of serious deficiencies in Plaintiff's medical care that required her attention or intervention.

In the first place, Defendant Ottesen did not prepare and submit responses to Plaintiff's

grievances until February 2014, long after Plaintiff's transfer from EBRPP. Thus, there is no evidence suggesting that Defendant Ottesen was personally aware of Plaintiff's complaints during the two-month period of his confinement at that facility when he was experiencing dental problems. Second, Plaintiff's grievances themselves were not sufficient to advise Defendant Ottesen of the purported severity of Plaintiff's condition so as to potentially prompt her to intervene in his care in any event. Specifically, Plaintiff's initial grievance was received by prison officials on September 9, 2013 and complained only about the refusal by Nurse Dachel Williams to attend to Plaintiff on the night of September 1, 2013. *See* R. Doc. 166-6 at p. 41. As noted above, however, this overnight refusal by Nurse Williams resulted in only a brief delay in medical care because Plaintiff was admittedly seen and treated by another nurse the next morning. Notwithstanding, Defendant Ottesen noted in her response to Plaintiff's grievance that the grievance was well-founded and that disciplinary action had been taken against the offending employee. *See id*. at p. 43. Plaintiff's second grievance was dated September 11, 2013 and complained that his scheduled appointment for a physical examination on September 4, 2013 had not taken place and that, as a result, he had not been placed on antibiotics "to control infection." *See id*. at p. 49. Prison officials, however, did not receive this grievance until September 20, 2013, *see id*., and in finding the grievance to be unfounded, Defendant Ottesen noted that Plaintiff had, in the interim, been seen by the prison dentist as scheduled on September 13, 2013 and had been given antibiotics and pain medication, thereby effectively rendering his grievance moot.[7] *See id*. at p. 50. Finally, in Plaintiff's third grievance, he complained only of the events of

---

7   Defendant Ottesen's response to Plaintiff's grievance also states that Plaintiff was seen for a physical examination on September 4, 2013. It appears from Plaintiff's records, however, that he had previously been seen for his physical examination on August 19, 2013 and the records reflect only that blood was drawn for a hepatitis test on September 5, 2013. *See* R. Doc. 166-6 at p. 60.

September 22, 2013, when he was allegedly escorted to the medical office by a security officer, and a nurse allegedly refused to prepare "paperwork" in connection with Plaintiff's wish to obtain emergency attention. *See* note 4, *supra*. Specifically, Plaintiff asserted therein that the nurse "flat out told me that she was not going to do the 'paper work' for a tooth and there's nothing she could do, instead of giving me some asprin [sic] for the pain and maybe some gauze or something to pack my mouth and control the bleeding." *See* R. Doc. 166-6 at p. 46. In finding this grievance to be also unfounded, Defendant Ottesen essentially agreed that there was "nothing else the nurse could do," specifically because Plaintiff was already on antibiotics and the strongest pain medication available at EBRPP for tooth problems and because an appointment with an oral surgeon had been requested for him. *See id*. at p. 47 In short, these three grievances in no way provided notice to Defendant Ottesen that Plaintiff was experiencing a serious deficiency or lapse in appropriate care at the prison in response to his dental complaints.[8] Nor do these grievances provide any notification whatever as to the issue that the Court views to be the principal claim asserted by Plaintiff herein, *i.e.*, that the delay in providing him with dental care and with an appointment for surgical extraction of his teeth after a referral was issued by Dr. Leggio resulted in a violation of Plaintiff's constitutional rights.

As noted above, a delay in the provision of medical care presents a viable constitutional claim only if Plaintiff can establish that there has been deliberate indifference to his serious medical needs and that the delay has resulted in substantial harm. In the instant case, the Court does not find that the six-week delay at issue in this case before an appointment could be scheduled at an outside facility constituted deliberate indifference to Plaintiff's serious medical needs,

---

8   The record reflects that Plaintiff prepared two additional administrative grievances, asserting essentially identical complaints that he sent directly to the offices of the Louisiana Department of Public Safety and Corrections. *See*. R. Doc. 166-6 at pp. 53 and 57.

particularly inasmuch as Plaintiff was seen by a dentist at the facility, was prescribed pain medication and antibiotics, was issued a referral to see an oral surgeon, and was seen and evaluated by medical personnel when he submitted sick call requests. *In Harris v. Walley*, 2009 WL 1658473 (S.D. Miss. June 11, 2009), *affirmed*, 436 Fed. Appx. 372 (5th Cir. 2011), no deliberate indifference was found from delay on the part of medical administrators where tooth extraction was recommended for the inmate plaintiff on June 25, 2002 but the extraction did not occur until more than a year later on July 2, 2003. In that case, after the initial recommendation was made for extraction, a second opinion was requested by prison officials and was obtained from another dentist four months later, on October 28, 2002, which confirmed the recommendation for extraction. The plaintiff was thereafter seen on multiple occasions by the two dentists, and each time the recommendation was for extraction, with the plaintiff being provided with medication for pain and infection. On May 13, 2013, ten months after the initial recommendation, a referral was finally made for the plaintiff to be seen by an oral surgeon, after which, six weeks later on July 2, 2013, five of the plaintiff's teeth were extracted. In finding no deliberate indifference on the part of prison administrators or the prison medical director, the Court noted that there was no suggestion that the defendants "had any specific malevolent motive toward [the plaintiff] or had any desire for him to suffer pain and infection." Further, the Court noted that the plaintiff's "treatment, which included pain medication and treatment when infection was present, prevents any finding of 'subjective deliberate indifference'" on the part of prison administrators. Finally, the Court concluded that in the absence of any showing of permanent injury resulting from the delay in extraction, "the delay in his medical care did not result in 'substantial harm,' as required to state a cause of action under § 1983." The Court specifically opined that "[p]laintiff's dissatisfaction with the timing of the surgery does not render this a constitutional claim, even if

the surgery was recommended earlier." *See also Walcott v. Pat*, 2017 WL 1403336 (E.D. La. March 13, 2017) (no liability on the part of attending nurse where the plaintiff was placed on a waiting list to see the dentist, was provided with medications during the interim, yet did not obtain a dental appointment and extraction until three months after his initial complaint, noting that "absent an allegation of substantial harm, a delay of four months, … or even five months … in the provision of dental care fails to rise to the level of a constitutional violation"); *Coleman v. Whitney*, 2007 WL 2712942 (E.D. La. Sept. 13, 2007) (no deliberate indifference found where the plaintiff was placed on waiting list to see a dentist for a "severe toothache" but where no appointment occurred before he was transferred to another facility two months later, noting that plaintiff was provided with medication for pain and infection, was seen by a physician, and was seen by medical personnel when he complained). *Cf., Golston v. Wilkinson*, 2010 WL 2710386 (W.D. La. May 11, 2010) (summary judgment denied to prison dentist and medical director where the plaintiff was not provided with pain medication during a one-month initial delay in seeing dentist and was not provided with pain medication for more than four months after the dentist diagnosed severe dental problems and ordered extraction of plaintiff's teeth, which extractions did not occur until three and five months after the diagnosis. The court specifically noted that the plaintiff's complaint as to the "timing of his extractions does not state an Eighth Amendment claim for denial of medical care" but that questions remained because the defendants had "not shown why [plaintiff] was not provided pain medication" during the months-long period of delay).

Based on the foregoing, the Court finds that the eleven-day period that elapsed before Plaintiff initially saw the prison dentist and the six-week delay in thereafter scheduling an outside appointment with an oral surgeon have not been shown to be the result of deliberate medical indifference or systemic deficiencies in the EBRPP medical program. Of particular significance

in this regard is the fact that Plaintiff was admittedly provided with pain medication after his initial complaint, was seen and evaluated by a dentist eleven days later, was issued a referral to see an oral surgeon after that evaluation, was provided with pain medication and antibiotics thereafter, and was seen and evaluated by medical providers at the prison whenever he submitted sick call requests. He has not shown that Defendant Ottesen was personally aware of the extent of his complaints or of the purported lapses in his care and, even if so, that she failed to take appropriate action in response thereto. Plaintiff's contention that Defendant Ottesen was apprised of his complaints through receipt of his written requests and grievances, as discussed above, is conclusory and is not supported by a review of Plaintiff's written submissions and her responses thereto.[9] And even if, as Plaintiff alleges, a prison security officer, Capt. Caderette, may have personally notified Defendant Ottesen on or about October 30, 2013 of Plaintiff's purported serious medical complaints, this was four days before Plaintiff was transferred to another facility and so did not provide a reasonable opportunity for corrective action on the part of Defendant.[10]

---

9      The Court also finds to be conclusory and unsupported by the record Plaintiff's assertions that Defendant Ottesen intentionally interfered with his care, delayed his care for monetary reasons, or altered prison records. There is no evidence in the record that supports these assertions.

10     Plaintiff's assertion that he was allegedly told by a nurse on November 1, 2013 (and shown a corresponding computer entry) that he had missed a scheduled appointment with an outside facility on October 30, 2013 is inconsistent with other evidence in the record and is likely the result of mere mistake or confusion. Specifically, the Hood Dental Clinic has responded to a subpoena issued by the Court and stated that "Mr. Burns never had an appointment nor was seen in our office." *See* R. Doc. 162. Moreover, the referenced date, October 30, 2013 was a Wednesday in any event, which was not the day of the week upon which outside oral surgery appointments were scheduled to occur with EBRPP inmates. A synopsis of Plaintiff's medical care at the facility reflects instead that on October 30, 2013, an "oral surgery follow-up" was conducted which indicated, "appointment date still pending," *see* R. Doc. 166-6 at p. 60, and this is consistent with a computer print-out that reflects that on that date, Plaintiff was noted to have an "Outside Clinic Referral," not an outside clinic appointment. *See id.* at p. 61. *See also* Defendant's Response to Plaintiff's Interrogatory No. 11, R. Doc. 166-6 at p. 67, and Response to Plaintiff's Request for Production of Documents No. 12, *id* at p. 72, which explain the procedures utilized by prison medical personnel in scheduling outside clinic appointments. Although there may have been

Finally, there is no showing that the six-week delay that elapsed at EBRPP in this case resulted in any substantial harm to Plaintiff or caused any permanent or life-long impairment, which is a prerequisite for a claim of delay in the provision of medical treatment to an inmate plaintiff under § 1983. *See Harris v. Walley, supra*, 436 Fed. Appx. at 372 (finding that the plaintiff's "claims regarding the delay in his receiving surgery are likewise unavailing in the light of there being no genuine dispute of material fact regarding his not suffering permanent injury"). Accordingly, although Plaintiff undoubtedly experienced pain and discomfort during the pertinent two-month period of his confinement at EBRPP, this is not determinative:

> As observed by the Fifth Circuit, "[c]ontinuing … pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." In short, the determinative issue here is not whether the dental care that Plaintiff received was substandard in some respect, whether his dental problems or pain persisted, or whether he was dissatisfied with the timeline within which such care was provided; rather, it is only whether his serious medical/dental needs were met with deliberate indifference *by the named Defendants*. Based upon the record that is presently before it, the Court is constrained to answer that question in the negative.

*Walcott v. Pat, supra*, 2017 WL 1403336, *5 (citation omitted and emphasis in original). For these reasons, Defendant Ottesen's Motion for Summary Judgment should be granted, and Plaintiff's claims should be dismissed.

---

confusion and delay and even negligence in the timing and scheduling of Plaintiff's outside referral and outside appointment, this does not support a finding of nefarious intent on the part of Defendant Ottesen, support a finding that Defendant Ottesen was personally responsible for the resulting delay, or elevate the six-week delay in this case to one of constitutional dimension, particularly absent a showing of substantial harm resulting from the delay. *See Harris v. Walley, supra* (no liability where a 10-month delay occurred between a recommendation for tooth extraction and a referral to an outside clinic, and where a six-week delay followed before oral surgery took place). *See also Thomas v. Ouachita Correctional Center*, 2012 WL 21231802, *7 (W.D. La. April 19, 2012) (noting that even if a supervising nurse's actions "somehow contributed to the delays" in the plaintiff's treatment, there was no evidence showing "that her actions or inaction materially exacerbated his condition or caused him harm").

## RECOMMENDATION

It is recommended that Plaintiff's claims asserted against Prison Medical Services be dismissed for the reasons stated in the Magistrate Judge's Report and Recommendation dated March 4, 2016 (R. Doc. 137). It is further recommended that Plaintiff's Motion for Summary Judgment (R. Doc. 183) be denied and that the Motion for Summary Judgment of Defendant Linda Ottesen (R. Doc. 154) be granted, dismissing Plaintiff's claims asserted against Defendant Ottesen, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on September 5, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**